20-MJ-6644-MPK

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer J. Penton, having been duly sworn, on oath depose and state that:

1. I am a Massachusetts State Police ("MSP") Trooper, and have been so employed since 2015. Prior to that I worked as a Police Officer in the City of Boston for nine years and prior to that, I worked as a police officer in the City of New Bedford for three years. Additionally, I am currently assigned as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). In that capacity, I investigate violations of the federal firearms statutes and have participated in many investigations relating to the unlawful possession of firearms and ammunition.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a felony offense and knows they have been so convicted to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a criminal complaint charging RAUGHN WILLIAMS with being a felon in possession of a firearm and ammunition in violation of that statute.

3. The statements contained in this affidavit are based on my own investigation, work done by other ATF agents, and on information provided to me by MSP Troopers as well as officers of the Chelsea Police Department ("CPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe WILLIAMS violated 18 U.S.C. § 922(g)(1), and therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4.      Shortly before 12 p.m. on August 10, 2020, on Storrow Drive Eastbound in Boston, MA (a public way), Trooper Brian Donaghey observed a black 2018 Ford Focus bearing MA registration 9VG174 (the "Focus") driving with tint affixed to its windows that allowed less light in than the 35% legal minimum.   Trooper Donaghey activated the lights on his Massachusetts State Police cruiser, and attempted to stop the Focus.

5.      Upon seeing Trooper Donaghey's cruiser, the Focus accelerated at a high rate of speed and a pursuit ensued along Storrow Drive Eastbound, to the Tobin Bridge.   The Focus exited the Tobin Bridge into the neighboring city of Chelsea.   The Focus crashed into two vehicles on Park Street in Chelsea.   Witnesses on scene told responding officers that two dark-skinned males fled the vehicle on foot onto Park Street.   One of the suspects was described as a tall black male, with a muscular build, wearing a red shirt.   A "Be On The Lookout" was broadcast from MSP Dispatchers to CPD Dispatchers, so the description was transmitted to Chelsea Police over their radios.

6.      A short time later, Trooper Donaghey was notified that CPD officers had located a male matching the witness's description of the muscular black male with the red shirt and dark jeans on Highland Street and they were detaining him pending MSP arrival.   Upon seeing the CPD officers on Highland Street, WILLIAMS had fled on foot, but he was chased and apprehended.

7.      After being detained, WILLAMS began complaining of chest pains and an inability to breathe. CPD officers called for Emergency Medical Services ("EMS") and began treating him.   When Troopers arrived on Highland Street, it was determined by EMS that

WILLIAMS would be transported to Massachusetts General Hospital ("MGH") for further evaluation.

8. Prior to being placed in the ambulance, Troopers Mesheau and Melvin pat-frisked him. In connection with the pat-frisk, Trooper Melvin asked WILLIAMS whether he had weapons or anything dangerous on him. WILLIAMS stated that he had a gun in his left pant leg. Trooper Melvin pat-frisked that area, and felt a hard object consistent with a firearm in his jeans. He recovered a loaded Smith & Wesson SD40VE, .40 caliber pistol bearing serial number DUY5847, with one round in the chamber and thirteen .40 caliber hollow point rounds in a single magazine in WILLIAMS's pants. WILLIAMS did not possess a License to Carry. In addition to the firearm, Trooper Melvin located two bags of a brown substance and two bags of a white hard substance, believed to be controlled substances, in his pant pocket.

9. Trooper Golbranson escorted WILLIAMS in the ambulance to Massachusetts General Hospital, while Trooper Melvin followed behind. At MGH, Trooper Melvin read WILLIAMS his Miranda Warnings which he acknowledged that he understood. WILLIAMS then stated, "I saw the cop behind me and I never let cops behind me. He was in front of me and then got behind me. I was driving the speed limit. I had crack on me and no license, bro." WILLIAMS also stated, "I was driving, bro. I'm done anyways. I got warrants." After WILLIAMS refused treatment at the hospital, he was placed under arrest for the unlawful possession of a firearm and several other violations of Massachusetts General Laws stemming from the events of that day and booked at SP Tunnels by Trooper Donaghey.

10. The firearm and ammunition recovered from WILLIAMS were processed, placed into evidence, and sent to the Massachusetts State Police Crime Lab for analysis. The

3

firearm was successfully test fired by the MSP Ballistics Unit. The firearm and ammunition was later examined by ATF Special Agent Jay Godino, who is trained to perform interstate commerce nexus examinations. Special Agent Godino determined that they were a "firearm" and "ammunition" for purposes of federal law, and determined that the firearm and ammunition had traveled in / affected interstate commerce prior to being seized in Chelsea in August 2020.

11.  I have reviewed WILLIAMS's criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that WILLIAMS was convicted in 2016 out of the Dorchester Division of the Boston Municipal Court on charges of Unlawful Possession of Firearm without Permit and Assault and Battery with a Dangerous Weapon. Based on my training and experience, I know that these are crimes punishable under Massachusetts law by imprisonment for more than one year, and WILLIAMS's criminal record indicates that he was sentenced to two years imprisonment on those charges.

12.  Among other reasons, because he was sentenced to two years imprisonment for these crimes, he must have known at the time he committed the instant offense that he had been convicted in a court of a crime punishable by a term of imprisonment exceeding one year.

13. Based on the foregoing, I submit that there is probable cause to believe that, on or about August 10th, 2020, RAUGHN WILLIAMS having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting commerce, a firearm and ammunition in violation of Title 18, United States Code, Section 922 (g)(1).

/s/ Jennifer J. Penton
_____
Jennifer J. Penton
Massachusetts State Trooper
Task Force Officer, ATF

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 22nd day of October, 2020.

_____
M. PAGE KELLEY
CHIEF U.S. MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS